997 A.2d 768

**MOTOR VEHICLE ADMINISTRATION**

v.

**Adam Leigh SHEA.**

**No. 133, Sept. Term, 2008.**

Court of Appeals of Maryland.

June 23, 2010.

2

**4**

Leight D. Collins, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Glen Burnie, MD), on brief, for petitioner.

Lawrence S. Greenberg (Greenberg Law Office of Baltimore, MD), on brief, for respondent.

Leonard R. Stamm, Johanna Cohen Leshner, Goldstein & Stamm, P.A., Greenbelt, MD, for Amicus Curiae brief of the Maryland Criminal Defense Attorney's Association.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

This appeal involves § 16–205.1 of the Transportation Article of the Maryland Code, often referred to as the "implied consent, administrative per se law" (hereinafter, "the Statute"). *See, e.g., Motor Vehicle Admin. v. Richards,* 356 Md. 356, 362, 739 A.2d 58, 62 (1999). The Statute authorizes a police officer who has "reasonable grounds to believe" that a driver "is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol [or] while impaired by alcohol" to request the driver to submit to a test to determine the driver's blood alcohol concentration ("BAC"). *See* § 16.205.1(b)(2).[1] If the driver agrees to the test and the test discloses a BAC of 0.15 or greater, then the Statute provides that the officer is to present to the driver an order of automatic suspension by the Motor Vehicle Administration ("MVA"). *See* § 16–205.1(b)(3)(i)–(ii). The Statute permits

---

1. The text of this and other pertinent portions of the Statute are set forth more completely, *infra.* Unless otherwise provided, all statutory references are to Maryland Code, Transportation Article (1977, 2009 Repl. Vol.), which contains the current form of the Statute. The subsections of the Statute at issue in this case have not been changed since the time of the events in question.

the driver to request a hearing at the Office of Administrative Hearings to show cause why the driver's license should not be suspended. At that hearing, the driver may challenge, among other matters, whether the officer had the requisite reasonable grounds to make the request for testing. *See* § 16–205.1(f)(7)(i)(1).

Adam Leigh Shea, Respondent, was stopped by a police officer who observed him driving while not wearing a seatbelt. During the stop, the officer smelled a moderate odor of alcohol emanating from Respondent's person. The officer conducted field sobriety tests (the results of which are not reflected in the record) and then arrested Respondent. At the police station, the officer advised Respondent of his rights and the potential penalties under the Statute, and asked him if he wished to take a breath test to ascertain his BAC. Respondent agreed to the test. The test result disclosed a BAC of 0.18. Pursuant to the Statute, the officer presented Respondent with an order of administrative suspension of his driver's license.

Thereafter, Respondent requested a show cause hearing. At the hearing he argued that: (1) the police officer who detained him lacked the requisite reasonable grounds to request the test; and (2) the test result was invalid. The Administrative Law Judge (ALJ) rejected the first argument and declined to consider the second, reasoning that the Statute did not permit Respondent to make the latter argument at a show cause hearing. The ALJ ordered the suspension of Respondent's driver's license for 90 days, and, as the Statute authorized the ALJ to do, promptly ordered the suspension stayed for one year, conditioned upon Respondent's participation in the Ignition Interlock Program. *See* § 16–205.1(n)(4)(ii).

Respondent sought judicial review of the ALJ's decision, raising in the petition the arguments he had presented to the ALJ.[2] The Circuit Court for Baltimore County reversed the

---

2. Although a hearing was held on the petition, the record on appeal does not have a transcript of that proceeding.

decision of the ALJ because, in the court's view, the record did not contain substantial evidence to support the ALJ's finding that the officer had reasonable grounds to request the test. In coming to that determination, the court decided, as a preliminary matter, that the officer did not have reasonable suspicion to conduct the field sobriety tests and, consequently, "all actions thereafter, [including, presumably, the test request and results,] are legally unsupportable."

We granted the MVA's petition to review the judgment of the Circuit Court. For the reasons that follow, we reverse that judgment.

## I.

The facts leading to the suspension of Respondent's driver's license can be briefly stated. On the night of April 24, 2007, Officer William Phelps of the Baltimore City Police Department stopped the vehicle that Respondent was driving. Officer Phelps's description of the stop is contained on the MVA Form DR–15A he later completed.[3] He wrote: "Driver observed operating vehicle w/o [meaning "without"] seat belt on. After being stopped a moderate odor of a(sic) alcohol beverage was emanating from his person—Driver was given SFST's [meaning "standard field sobriety tests"] and placed in custody." We surmise from our reading of the transcript of the hearing before the ALJ that Respondent was charged with one or more alcohol-related driving offenses, and was found guilty of driving while impaired by alcohol. *See* Md.Code (1977, 2009 Repl. Vol), § 21–902 of the Transportation Article.

After taking Respondent into custody, Officer Phelps drove him to the police station. There, Officer Phelps asked Respondent to submit to a breath test to determine his BAC.[4] As

---

3. Form DR–15A, "Officer's Certification and Order of Suspension," includes, among other information, the police officer's certification of reasonable grounds to detain and request the driver to submit to the test. We shall discuss Form DR–15A more fully, *infra*.

4. The Statute authorizes a test of breath, with limited exceptions for a blood test, to determine alcohol concentration. *See* § 16.205.1(a)(1)(iv)(1).

is required by the Statute, Respondent either read, or had read to him, MVA Form DR–15 "Advice of Rights" and agreed to take the test.[5] A test technician for the Baltimore City Police Department performed the test and certified that the test produced a result of 0.18 BAC.

When a test registers a BAC higher than .08, subsection (b)(3) of the Statute provides, in part, that

the police officer shall: (i) Confiscate the person's driver's license issued by this State; (ii) Acting on behalf of the [Motor Vehicle] Administration, personally serve an order of suspension on the person; (iii) Issue a temporary license to drive; [and] (iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title [Vehicle Laws— Drivers' Licenses].

The Statute further requires the officer to inform the person of his or her right to challenge the license suspension at an administrative "show cause" hearing, and to inform the person of the sanctions that "shall be imposed in the event of failure to request a hearing, failure to attend a requested hearing, or upon an adverse finding by the hearing officer[.]" § 16–205.1(b)(3)(v)–(vi).

Subsection (b)(3)(viii)(1)-(3) of the Statute also requires the police officer to send, within 72 hours, a sworn statement to the MVA, setting forth the certification of the officer's "reasonable grounds to believe that the person had been driving or

---

5. Form DR–15, "Advice of Rights," is detailed, and includes, among other advice, the following:

You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.

For a complete description of Form DR–15 and a discussion of it, see *Motor Vehicle Admin. v. Delawter*, 403 Md. 243, 941 A.2d 1067 (2008).

attempting to drive a motor vehicle ... while under the influence of alcohol." The officer must also state if "the person submitted to the test which indicated an alcohol concentration of 0.08 or more at the time of testing," and that "[t]he person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who ... takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section." [6] The DR–15A Form contained in the record reflects compliance with those statutory requirements.

### The show cause hearing

Respondent exercised his right to request a hearing at the Office of Administrative Hearings, at which he had the opportunity to show cause why his license should not be suspended. He was represented by counsel at that hearing. The ALJ received, without objection from Respondent, the MVA forms that were generated in this case: Form DR–15 "Advice of Rights"; Form DR–15A "Certification and Order of Suspension"; and Form MSP–33 "Notification to Defendant of Result of Test Alcohol Concentration." The ALJ found, based on those documents, a prima facie case for suspension of Respondent's license.[7] *See* § 16–205.1(f)(7)(ii) (providing that "[t]he sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of ... a test result indicating an alcohol concentration of 0.15 or more at the time of testing"); § 16–205.1(b)(1)(i)(2)(A) (providing for the sanc-

---

6. The Statute permits modification of the suspension "if the licensee agrees to participate in the Ignition Interlock Program for 1 year." § 16–205.1(n)(4)(ii). We have mentioned that the ALJ modified the automatic suspension of Respondent's driver's license pursuant to his agreement to participate in the Interlock Program.

7. The ALJ also noted that the record contained evidence of Respondent's conviction, on July 18, 2007, of driving or attempting to drive while impaired by alcohol, resulting in eight points on Respondent's driving record.

tion of a 90–day suspension for a first-time offender with a BAC test result of 0.15 or greater).

Respondent called Officer Phelps to testify solely about the test procedure. Officer Phelps testified that the test technician spent "ten or fifteen minutes at most" observing Respondent before administering the breath test. Following that testimony, and with Respondent's agreement that the officer was no longer needed, the ALJ released the officer from the hearing. Respondent then made a motion that no action be taken because, according to the officer's testimony, the technician did not follow the procedure set forth in the Regulations of the Toxicologist requiring the tester, before administering the test, to observe for twenty minutes the person who is to be given the breathalyzer test.[8] The ALJ responded that "[t]he only thing I've got in the file is a certification from [the testing technician] that the test result was a .18" and "[t]here is no direct evidence that the individual ate or drank anything or did anything at all. He was brought in and he took the test and it was a .18 and it's confirmed by the report and the test strip." The ALJ thereafter denied the motion, explaining that § 16–205.1(f)(7)(i) sets forth the only issues to be determined at a hearing and a challenge to the test technician's failure to follow the proper procedure does not appear among them.[9]

---

**8.** For a discussion of the Regulations of the Toxicologist, see *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 42–44, 821 A.2d 62, 65–66 (2003).

**9.** Section 16–205.1(f)(7)(i) provides:

At a hearing under this section, the person has the rights described in § 12–206 of this article, but at the hearing the only issues shall be: 1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title; 2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

**10**

Respondent then argued that due, in part, to the lack of information in the record concerning the results of the field sobriety tests, Officer Phelps failed to state reasonable grounds to request Respondent to submit to the breath test. The ALJ rejected that argument, deciding that Officer Phelps had set forth in Form DR–15A reasonable grounds to believe that Respondent was driving under the influence of alcohol. The ALJ noted, in particular, the officer's detection of a moderate odor of alcohol emanating from Respondent's person, the officer's administration of the field sobriety tests, and his subsequent arrest of Respondent.

The ALJ then found prima facie evidence, unrebutted by Respondent, that the test result showed an alcohol concentration of more than 0.15. Consequently, the ALJ ordered the suspension of Respondent's license for 90 days. *See* § 16–205.1(b)(1)(i)(2). After discussing with Respondent the Ignition Interlock Program and receiving his agreement to participate in the program, the ALJ stayed the suspension for one year, conditioned upon Respondent's participation in the program.

### Judicial review in the Circuit Court

In his petition for judicial review, Respondent raised two challenges to the decision of the ALJ: (1) whether there was substantial evidence in the record to support the "reasonable grounds" finding of the ALJ; and (2) whether the ALJ erred by refusing to entertain Respondent's challenge to the validity

---

3. Whether the police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.08 or more at the time of the testing;

6. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.15 or more at the time of testing; or

7. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle or held a commercial driver's license.

of the breathalyzer test results. Following a hearing, the Circuit Court issued a written Opinion and Order reversing the decision of the ALJ on the ground that "there was not substantial evidence in the record to support the ALJ's finding."

Before addressing the merits of Respondent's contentions, the Circuit Court noted that "the administration of field sobriety tests by a police officer during a valid traffic stop constitutes a search within the meaning of the Fourth Amendment," and, therefore, "the conduct of those tests is constitutionally permissible when the officer has reasonable articulable suspicion that the driver is under the influence of alcohol." Then, turning to the present case, the court opined:

> The only fact on which the officer relied in deciding to administer the field sobriety test was the "moderate" smell of alcohol emanating from [Respondent's] person. Although this fact combined with other factors could provide reasonable articulable suspicion of criminal activity, i.e., driving under the influence of alcohol, this fact, standing alone, does not rise to that level. As with bloodshot eyes, a "moderate" smell of alcohol could result from a variety of non-criminal circumstances. It is not illegal for someone age 21 or older to consume alcohol, and a "moderate" smell could emanate from consumption of only one alcoholic beverage. Further the mere presence in a restaurant or bar where an alcoholic beverage was spilled on one's clothing, without any consumption of that beverage having occurred, could also result in a "moderate" smell of alcohol.

> * * *

> In the instant case, the only facts found in the hearing record, on which this court can rely, [are] that [Respondent] was stopped for not wearing a seatbelt, and there was a "moderate" smell of alcohol emanating from his person. In using a totality of circumstances analysis, this court cannot find that these facts alone rise to the level of reasonable articulable suspicion warranting the administration of a field sobriety test. As such, this court believes that there was

not substantial evidence in the record to support the ALJ's finding.

Addressing Respondent's claim that the breathalyzer results were invalid because the tester had not followed protocol, the court determined: "As this court has found that there was no reasonable articulable suspicion to support the officer's decision to administer the field sobriety test, all actions thereafter are legally unsupportable." The MVA argues, Respondent does not disagree, and we accept that, in so ruling, the court, without expressly characterizing it as such, applied the Fourth Amendment doctrines known as "the fruit of the poisonous tree" and "the exclusionary rule" to reason that the breathalyzer test results could not be used as a basis for the administrative suspension of Respondent's driving license. Consequently, the court did not reach the merits of Respondent's challenge related to the validity of the test results.

The MVA filed a petition for a writ of certiorari, pursuant to Maryland Code (2009 Repl. Vol.), § 12–305 of the Courts and Judicial Proceedings Article. We granted the petition, *Motor Vehicle Admin. v. Shea*, 406 Md. 744, 962 A.2d 370 (2008), to address the following question:

> Does a police officer's certification that a moderate odor of an alcoholic beverage was of sufficient strength to suspect that a motorist was driving while impaired by alcohol, along with subsequent field sobriety tests that led to the driver's arrest, allow an administrative law judge to find reasonable grounds to request an alcohol content test under Transportation Article § 16–205.1(b)(2), without application of Fourth Amendment standards to evaluate the sufficiency of a police officer's reasonable grounds?

## II.

The MVA requests that we reverse the judgment of the Circuit Court because there is substantial evidence supporting the ALJ's decision that Officer Phelps had "reasonable grounds" to believe that Respondent drove while alcohol-impaired and, therefore, the officer had the authority to

request Respondent to submit to a breath test to determine his BAC. The MVA argues, in particular, that the Circuit Court "overstepped its role upon judicial review"; "reached its incorrect result by wrongly dissecting each factor stated by the officer and applying incorrect legal standards to each piece of evidence, rather than properly considering the circumstances as a whole"; and "erred by overturning the ALJ's decision based upon analysis of a constitutional question [i.e., whether the police officer had reasonable suspicion, under the Fourth Amendment, to conduct the field sobriety tests,] that was neither preserved for [judicial] review nor applicable to the case at hand."

Respondent refutes the MVA's arguments, contending that the Circuit Court correctly reversed the ALJ's decision because there was insufficient evidence that Respondent was driving under the influence of or impaired by alcohol to constitute "reasonable grounds." Respondent notes what he characterizes as the omission of "critical" information at the hearing before the ALJ. He points out that Officer Phelps did not describe any other physical characteristics, such as bloodshot eyes or slurred speech, suggesting that Respondent had consumed alcohol; Respondent did not admit to drinking any alcohol; and the MVA presented no evidence that Respondent was driving erratically. Moreover, Respondent contends that Officer Phelps's indication on Form DR–15A that the odor of alcohol on Respondent's breath was "moderate" is not proof that Respondent was driving while impaired by alcohol because, as the Circuit Court determined, the odor could have resulted from consumption of a single alcoholic beverage or from an alcoholic beverage spilled on Respondent's clothing.

Respondent further asserts that the Circuit Court correctly determined that administration of the field sobriety tests was an illegal search under the Fourth Amendment because the only evidence suggesting the need for the tests was the odor of an alcoholic beverage emanating from his person, which is insufficient to establish "reasonable articulable suspicion" that Respondent had been driving under the influence of or impaired by alcohol. Respondent does not present further argu-

ment on this point. We shall assume that he agrees with the Circuit Court's ruling that all actions following the unlawfully conducted field sobriety tests—his arrest, the officer's request that he submit to the breath test, the administration of the test, and the test results—were also unlawful under the Fourth Amendment as the tainted "fruits" of the field sobriety tests, and, consequently, evidence of those actions, including the test results, could not provide a lawful basis for the administrative sanction imposed.

## III.

Judicial review of administrative decision-making is constrained, as we recently reiterated in *Delawter*:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given

considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected. 403 Md. at 256–57, 941 A.2d at 1076 (quoting *Aviation Administration v. Noland,* 386 Md. 556, 571–72, 873 A.2d 1145, 1154–55 (2005)) (internal quotation marks, footnote and citations omitted); *see also* Md.Code (2009 Repl. Vol.), § 10–222(f), (h) of the State Government Article (providing, in pertinent part, that "[j]udicial review of disputed issues of fact shall be confined to the record for judicial review," and, "[i]n a proceeding under this section, the court may remand, reverse, or modify the decision of the administrative agency" if, inter alia, the decision "is unsupported by competent, material, and substantial evidence in light of the entire record as submitted").

 In addition, it is settled law in Maryland that a court ordinarily "may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency." *Brodie v. Motor Vehicle Admin.,* 367 Md. 1, 4, 785 A.2d 747, 749 (2001) (quotation marks and internal citation omitted); *accord Motor Vehicle Admin. v. Weller,* 390 Md. 115, 128, 887 A.2d 1042, 1050 (2005). Furthermore, when we review the decision of an administrative agency, we look " 'through the circuit court's . . . decisions, although applying the same standards of review, and evaluate[ ] the decision of the agency.' " *People's Counsel for Balt. County v. Loyola College in Md.,* 406 Md. 54, 66, 956 A.2d, 166, 173 (2008) (quoting *People's Counsel for Balt. County v. Surina,* 400 Md. 662, 681, 929 A.2d 899, 910 (2007)).

We bear these principles in mind as we turn to the parties' contentions.

## IV.

 In considering the parties' arguments, we do not write on a clean slate. We have observed more than once that the purpose of the Statute is "to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests; the statute [is] not meant to

protect drivers." *Motor Vehicle Admin. v. Shepard,* 399 Md. 241, 255, 923 A.2d 100, 108 (2007) (citing *Richards,* 356 Md. at 374, 739 A.2d at 68 (1999)); *accord Motor Vehicle Admin. v. Jones,* 380 Md. 164, 179, 844 A.2d 388, 397 (2004); *Embrey v. Motor Vehicle Admin.,* 339 Md. 691, 697, 664 A.2d 911, 914 (1995). In addition, we have held that, "[g]iven the underlying purpose and plain language of § 16–205.1 requiring a detention and not an arrest," the phrase "reasonable grounds," in the Statute equates to "a reasonable articulable suspicion," as that term is understood in Fourth Amendment parlance. *Shepard,* 399 Md. at 254, 256, 923 A.2d at 107, 109–10.

Notwithstanding our holding in *Shepard* that "reasonable grounds" equates to the Fourth Amendment quantum of suspicion in criminal law that is denominated "reasonable articulable suspicion," we have emphasized that the Statute is not to be viewed as "quasi-criminal," and the goal of the hearing is not to punish, but "to prevent unscrupulous or incompetent persons from engaging in the licensed activity." *Richards,* 356 Md. at 372–73, 739 A.2d at 67–68 (internal quotation marks and citation omitted). In addition, we have noted that "subsection (f)(7) [of the Statute] makes paramountly clear that the constitutionality of the stop giving rise to the test request is not one of the issues to be presented at the hearing, nor is the possible exclusion of unconstitutionally seized evidence." *Id.* at 367, 739 A.2d at 64.

We therefore refused in *Richards* to engraft the exclusionary rule of the Fourth Amendment onto proceedings conducted under subsection (f) of the Statute. We reasoned that the Statute is remedial in nature, and we re-emphasized that the Statute's purposes

are first, to help effectuate the administrative goals of the MVA in ridding Maryland roadways of drunk drivers and, second, to encourage both general compliance with Maryland law as well as specific fulfillment of the consent to taking a properly requested chemical breath test implied by a motorist's entry upon and usage of this State's roads.

*Id.* at 374, 739 A.2d at 68. For this and other reasons discussed in *Richards*, including that there would be "marginal—if any—deterrent effect of excluding evidence from administrative license suspension proceedings" and that "proceedings, like those under § 16.205.1(f) are intended to be informal and summary in nature," we held "that the exclusionary rule of the Fourth Amendment should not be extended to proceedings conducted pursuant thereto." *Id.* at 376–77, 739 A.2d at 68.[10] It follows directly from our holding in *Richards*, and the rationale underpinning that holding, that the Fourth Amendment fruit of the poisonous tree doctrine, like the Fourth Amendment exclusionary rule, is inapplicable to license suspension proceedings conducted pursuant to the Statute.

## V.

We turn now to decide whether there is substantial evidence in the administrative record to support the ALJ's final decision that Officer Phelps had reasonable grounds, pursuant to the Statute, to request Respondent to take a test to determine his BAC. Preliminarily, notwithstanding that our role is not to review the Circuit Court's judgment, but rather to review the decision of the ALJ, *see Loyola College*, 406 Md. at 66–67, 956 A.2d at 173, we must explain why the Circuit

---

**10.** The Statute itself does not contain an exclusionary rule for evidence obtained in violation of it. *Shepard*, 399 Md. at 266–67, 923 A.2d at 114–15. "[I]n the absence of a statute or a rule promulgated by this Court, the Circuit Court does not have the inherent power to create an exclusionary rule of evidence under a statute that itself does not have an exclusionary rule" (internal quotation marks and citations omitted). *Thompson v. State*, 411 Md. 664, 672 n. 2, 985 A.2d 32, 36 n. 2 (2009).

We recognize, as we have done in the past, that the lack of an exclusionary rule applicable to evidence introduced at hearings under the Statute may cause some concern for abuse. See *Richards* and cases cited therein. 356 Md. at 377–78, 739 A.2d at 70–71. As we said in *Richards*, however, "the current statutory and regulatory framework for § 16–205.1 adequately addresses" any concern for police misconduct. *See also* COMAR 11.11.02.10(H)(1) (providing that, with respect to hearings under § 16–205.1, if a police officer obtains or seizes evidence while acting in bad faith and not as a reasonable officer should act in similar circumstances, the evidence is inadmissible). Respondent never has suggested that Officer Phelps acted in bad faith.

Court made several legal errors in reversing the ALJ's final decision.

To begin, the Circuit Court exceeded the bounds of judicial review of the ALJ's decision by employing a rationale for reversing that decision that was not advanced by Respondent at the show cause hearing, was not the basis of the ALJ's final decision, and was not presented to the Circuit Court by Respondent. *See Brodie,* 367 Md. at 4, 785 A.2d at 749. Even more problematic is that the Circuit Court ran directly afoul of *Richards* by employing a constitutional analysis of Officer Phelps's conduct preceding and including his request of Respondent to take a test to determine his BAC, and then letting that analysis determine the correctness of the ALJ's final decision.

The only relevant question before the Circuit Court was whether there was substantial evidence in the administrative record to support the ALJ's decision that Officer Phelps had reasonable grounds to request Respondent to take the test. Whether the officer had reasonable suspicion, under a Fourth Amendment analysis, to conduct field sobriety tests is simply irrelevant to whether the officer possessed reasonable grounds to request the breathalyzer test. The court's misplaced focus on the officer's compliance with the Fourth Amendment in conducting the field sobriety tests led, in turn, to the court's flawed conclusion that "all actions thereafter are legally unsupportable" and, therefore, the ALJ lacked a substantial basis for deciding that the police officer had reasonable grounds to request the test.

As for the final decision of the ALJ, there was substantial evidence to support it. We have said that the test for substantial evidence is "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached," giving deference to the ALJ's prerogative to find the facts and draw reasonable inferences from them. *Delawter,* 403 Md. at 256–57, 941 A.2d at 1076 (internal quotation marks and citation omitted). We also bear in mind that, in determining whether the ALJ had substantial evidence upon which to

decide whether Officer Phelps had reasonable grounds to request the test, we are guided by *Shepard,* in which we held that "reasonable grounds" means "reasonable articulable suspicion." 399 Md. at 254, 923 A.2d at 107.

Reasonable suspicion is a " 'common sense, nontechnical conception that considers factual and practical aspects of daily life and how reasonable and prudent people act.' " *Crosby v. State,* 408 Md. 490, 507, 970 A.2d 894, 903–04 (2009) (quoting *Bost v. State,* 406 Md. 341, 356, 958 A.2d 356, 365 (2008)). Reasonable suspicion requires less in the way of quantity and quality of evidence than is required for probable cause, *see Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 308 (1990), "and it falls considerably short of satisfying a preponderance of the evidence standard," *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740, 750 (2002). Nevertheless, reasonable suspicion "embraces something more than an inchoate and unparticularized suspicion or hunch," and the determination "must be based on the totality of the circumstances." *Crosby,* 408 Md. at 507, 970 A.2d at 904 (internal quotation marks and citation omitted). The analysis requires courts to give appropriate deference to the training and experience of the law enforcement officer and to the officer's ability to make reasonable inferences from his or her observations, based on that training and experience. *See id.,* 408 Md. at 508, 970 A.2d at 904; *accord Arvizu,* 534 U.S. at 266, 122 S.Ct. at 750–51, 151 L.Ed.2d at 749–50.

The evidence before the ALJ supported the ALJ's first-level findings that, after stopping Respondent for not wearing a seatbelt, Officer Phelps detected a moderate odor of alcohol emanating from Respondent's person, the officer then conducted field sobriety tests, and he then took Respondent into custody. The "moderate odor" of alcohol alone may have been enough to permit Officer Phelps reasonably to suspect that Respondent was driving while under the influence of or impaired by alcohol. We need not decide that question, however, because the ALJ was permitted to infer, as he obviously

did, that Officer Phelps arrested Respondent because his performance on the tests suggested alcohol impairment.[11]

Given the low quantum of suspicion necessary for "reasonable grounds," we hold that the administrative record contained substantial evidence to support the ALJ's final decision that Officer Phelps had the requisite reasonable grounds to request Respondent to take the breathalyzer test. The Circuit Court erred in coming to the contrary conclusion and reversing the final decision of the ALJ on that ground.

## VI.

We have one matter remaining. Because the Circuit Court excluded all evidence that was the product of the field sobriety tests and therefore reversed the ALJ's final decision on that ground, the court declined to address Respondent's argument that the ALJ improperly relied upon the results of the breathalyzer test in ordering the sanction of license suspension. We therefore remand the case with instructions to decide that issue.[12]

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO ABIDE THE RESULT.**

---

11. We have said that the results of the field sobriety tests were not made part of the administrative record. It is a far better practice for police officers to include, in the Form DR–15A certification, the results of any field sobriety tests the officer conducted, as well as any other indications of the driver's alcohol impairment.

12. That we have ordered a remand in this case is not to be interpreted as intimating our view on the merits of the claim.