22 A.3d 833

**MOTOR VEHICLE ADMINISTRATION**

v.

**Frank William LOANE, Jr.**

**No. 52, Sept. Term, 2010.**

Court of Appeals of Maryland.

June 22, 2011.

Dore J. Lebowitz, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, on brief), Glen Burnie, MD, for petitioner.

Gregory P. Jimeno (Jimeno & Gray P.A., Glen Burnie, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

This case presents yet another opportunity to construe provisions of § 16–205.1 of the Maryland Transportation Article ("T.R."), known as Maryland's "implied consent, administrative per se law" (hereinafter "the Statute").[1] Pursuant to subsection (a)(2) of the Statute, "[a]ny person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol...." Should the driver refuse to submit to such testing, the Statute provides for automatic suspension of the person's driver's license. *See* T.R. § 16–205.1(b)(1)(i)(3)(A). A driver may seek review of that suspension at a "show cause" hearing before an Administrative Law Judge ("ALJ"), at the Office of Administrative Hearings ("OAH").

The precise question we consider here is whether suspension of the driver's license hinges on proof by the Motor

---

1. Unless otherwise indicated, all statutory references herein are to the current version of the Statute, Maryland Code (2009 Repl. Vol.), § 16–205.1 of the Transportation Article.

Vehicle Administration ("MVA") at the show cause hearing that the driver was stopped on a highway or private property used by the public. For the following reasons, we answer "no" to that question.

## I.

On May 17, 2009, Officer Karsmith of the Ocean City Police Department stopped Respondent Frank William Loane, Jr. for failing to obey lane directions. After detecting an odor of alcohol on Respondent's breath, Officer Karsmith administered field sobriety tests. Respondent failed to complete those tests.

Officer Karsmith asked Respondent to submit to a chemical breath test, as authorized by T.R. § 16–205.1(b)(2).[2] Officer Karsmith informed Respondent of his right to refuse to submit to the breath test and, if he did, the resulting administrative sanctions. Officer Karsmith provided Respondent Form

---

**2.** T.R. § 16–205.1(b)(2) provides:

(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

(i) Detain the person;

(ii) Request that the person permit a test to be taken;

(iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;

(iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program under § 16–404.1 of this title, that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and

(v) Advise the person of the additional criminal penalties that may be imposed under § 27–101(x) of this article on conviction of a violation of § 21–902 of this article if the person knowingly refused to take a test arising out of the same circumstances as the violation.

DR–15, entitled "Advice of Rights," which explains the administrative process and the rights afforded a driver under the Statute. Respondent refused to submit to the breath test and signed Form DR–15. That form included a "No–Alcohol concentration test refused" check box, which was marked to indicate Respondent's refusal. In accordance with § 16–205.1(b)(3), Officer Karsmith confiscated Respondent's driver's license and issued him a temporary license and an Order of Suspension.[3]

Officer Karsmith completed and signed Form DR–15A, entitled "Officer's Certification and Order of Suspension."

---

**3.** T.R. § 16–205.1(b)(3) states in pertinent part that, when an individual refuses to take the blood alcohol test, "the police officer shall":

(i) Confiscate the person's driver's license issued by this State;

(ii) Acting on behalf of the Administration, personally serve an order of suspension on the person;

(iii) Issue a temporary license to drive;

(iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title;

(v) Inform the person that:

1. The person has a right to request, at that time or within 10 days, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing, and the hearing will be scheduled within 45 days; and

2. If a hearing request is not made at that time or within 10 days, but within 30 days the person requests a hearing, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing will be scheduled, but a request made after 10 days does not extend a temporary license issued by the police officer that allows the person to continue driving for 45 days;

(vi) Advise the person of the administrative sanctions that shall be imposed in the event of failure to request a hearing, failure to attend a requested hearing, or upon an adverse finding by the hearing officer;

(vii) Inform the person that, if the person refuses a test or takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing, the person may participate in the Ignition Interlock System Program under § 16–404.1 of this title instead of requesting a hearing under this paragraph, if the following conditions are met:

1. The persons driver's license is not currently suspended, revoked, canceled, or refused;

Officer Karsmith indicated on the form that he was a member of the Ocean City Police Department and had stopped Respondent for "failing to follow lane directions." Within the section of the form labeled "Location (Specify county or Baltimore City and Address)," Officer Karsmith wrote that the stop occurred in "Wor.," evidently referring to Worcester County. The exact address of the stop was not provided. Officer Karsmith affirmed under penalty of perjury, however, the truth and correctness of all information on Form DR–15A, which included the following pre-printed certification containing a statement that the stop occurred on a highway or private property that is used by the public in general:

> I, the undersigned officer, had reasonable grounds to believe that the driver described and named above had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of Section 16–813 of the Maryland Vehicle Law.

The language of the certification is identical in material respects to the "sworn statement" required by subsection (b)(3)(viii) of the Statute.[4]

---

2. The person was not charged with a moving violation arising out of the same circumstances as an administrative offense under this section that involved a death of, or serious physical injury to, another person; and

3. Within the same time limits set forth in item (v) of this paragraph, the person:

A. Surrenders a valid Maryland driver's license or signs a statement certifying that the driver's license is no longer in the person's possession; and

B. Elects in writing to participate in the Ignition Interlock System Program for 1 year[.]

4. T.R. § 16–205.1(b)(3)(viii) states:

Officer Karsmith forwarded to the MVA Respondent's driver's license, the completed and signed Form DR–15, and the completed and signed Form DR–15A. *See* T.R. § 16–205.1(b)(3)(viii).

### *The Show Cause Hearing*

Respondent filed a timely request for an administrative hearing to "show cause why [his] driver's license should not be suspended concerning the refusal to take the test...." *See* T.R. § 16–205.1(b)(3)(v)(1). Respondent was represented by counsel at the hearing. The MVA, as typically is done, appeared through its paper record, consisting of Form DR–15 and Form DR–15A.

Respondent did not present evidence or testimony to rebut the information contained on Form DR–15A. Nor did Respondent avail himself of COMAR 11.11.07.07 (entitled "Subpoena"), pursuant to which he could have requested issuance by the ALJ of a subpoena to require Officer Karsmith's attendance at the hearing.

———

Within 72 hours after the issuance of the order of suspension, send any confiscated driver's license, copy of the suspension order, and a sworn statement to the Administration, that states:

1.  The officer had reasonable grounds to believe that the person had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2.  The person refused to take a test when requested by the police officer, the person submitted to the test which indicated an alcohol concentration of 0.08 or more at the time of testing, or the person submitted to the test which indicated an alcohol concentration of 0.15 or more at the time of testing; and

3.  The person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test or takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section.

Instead, Respondent moved for "no action." He argued that his license could not be suspended unless the MVA first proved where the stop occurred, whether on a highway or private property used by the public in general. Respondent based that argument on the prefatory language contained in subsection (a)(2) of the Statute, which provides that "[a]ny person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a test...." That language, claimed Respondent, limits application of the Statute to those persons who at the operative time were driving or attempting to drive on a highway or private property used by the public in general. Respondent argued that the Form DR–15A used in his case "gives us no identifiable information whether [the stop occurred on] a public roadway or a private roadway used by the public in general."[5] Respondent further argued that the pre-printed "Certification of Police Officer" was insufficient because it "merely recit[ed] the statutory language" of T.R. § 16–205.1(b)(3)(viii)(1).

The ALJ evidently believed, or at least assumed for the sake of argument, that the MVA was required to prove the precise location of the stop. The ALJ, though, rejected Respondent's argument that the MVA failed to prove the location. The ALJ explained her reasoning: "Taking this entire [Form DR–15A] into consideration, I know [the stop occurred] in Maryland ... and that the officer has certified that the person was driving on a highway.... So, I find that the fact that the officer did not give me a specific address is not [a] sufficient basis to take no action in this matter."

The ALJ made additional findings pursuant to subsection (f)(8)(i) of the Statute. That subsection directs the ALJ to suspend a person's driver license if:

---

**5.** Respondent also alleged that Officer Karsmith did not provide reasonable grounds to support his request that Respondent submit to a breath test. Respondent does not pursue that contention before this Court.

1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. There was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. The police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed; and

4. A. The person refused to take the test; or

B. A test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.08 or more at the time of testing.

The ALJ found that Officer Karsmith had reasonable grounds to detain Respondent, there was evidence Respondent had used alcohol, and Respondent refused to submit to the test after being fully advised of the sanctions for refusal. The ALJ then suspended Respondent's driver's license for 120 days, pursuant to subsection (b)(1)(i)(3) of the Statute.

### Circuit Court Judicial Review

Respondent filed in the Circuit Court for Anne Arundel County a petition for judicial review of the ALJ's decision. See Md.Code (1984, 2009 Repl.Vol.), § 10–222(h) of the State Government Article ("S.G."). At the hearing on the petition, Respondent repeated the argument he had made before the ALJ. The MVA, relying on Motor Vehicle Admin. v. Jones, 380 Md. 164, 844 A.2d 388 (2004), countered that the location of the stop is not an issue that may be raised at the adminis-

trative hearing because it is not listed among the issues set forth in T.R. § 16–205.1(f)(7)(i). That subsection provides that, at the administrative hearing, "the only issues shall be:"

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.08 or more at the time of testing;

6. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.15 or more at the time of testing; or

7. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle or held a commercial driver's license.

T.R. § 16–205.1(f)(7)(i). The MVA further maintained that, even if the location of the stop may be raised at the administrative hearing, there was sufficient evidence before the ALJ—namely the information contained within Officer Karsmith's sworn statement—to support the ALJ's finding that the

stop of Respondent occurred on a highway or private road used by the public in general.

The Circuit Court agreed with Respondent that subsection (a)(2) of the Statute requires the MVA to prove that the stop occurred on a highway or private property that is used by the public in general. The court determined, moreover, that the issue may be raised at an administrative hearing. The court reasoned that the term "person," as used in subsection (f)(7)(i)(1) of the Statute, incorporates the language of subsection (a)(2) and thereby requires the MVA to present evidence that the "person [ ] drove or attempted to drive on a public highway or on public use private property." Looking to the record before the ALJ, the court determined that there was not substantial evidence to support the ALJ's finding that the stop occurred on a public highway or on publicly-used private property. The court reversed the decision of the ALJ and remanded the case to the OAH with directions to reverse the suspension of Respondent's license.

The MVA filed a petition for writ of certiorari, which we granted to address the following question:

> Did the administrative law judge correctly conclude that the implied consent statute, Md.Code Ann., Transp. II § 16–205.1(f), does not require the MVA to prove the exact location when a suspected drunk driver was detained after driving on a "highway or private property used by the public in general," before suspending the motorist's license for a test refusal?

## II.

"Judicial review of administrative decision-making 'is constrained.'" *Motor Vehicle Admin. v. Aiken,* 418 Md. 11, 26, 12 A.3d 656, 664 (2011) (citation omitted); *Motor Vehicle Admin. v. Shea,* 415 Md. 1, 14, 997 A.2d 768, 775 (2010); S.G. § 10–222(h)(3).[6] We look through the judgment of the Circuit

---

6. S.G. § 10–222(h)(3) provides that a reviewing court may reverse or modify an administrative decision only if a "substantial right" of an

Court and focus on the agency's decision. *People's Counsel for Baltimore County v. Loyola College in Maryland,* 406 Md. 54, 66, 956 A.2d 166, 173 (2008). Our review of that decision is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency. Even with re-gard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. *Aiken,* 418 Md. at 27, 12 A.3d at 665 (quoting *Shea,* 415 Md. at 14–15, 997 A.2d at 775–76 (internal quotation marks and citations omitted)). Moreover, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by the reviewing courts." *Shea,* 415 Md. at 15, 997 A.2d at 776.

---

individual may have been prejudiced because of a finding, conclusion, or decision that:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

This case involves the ALJ's interpretation and application of the Statute, which the MVA administers. We therefore shall "review the ALJ's decision for legal correctness, giving appropriate weight to the MVA's interpretation of the Statute." *Aiken,* 418 Md. at 27, 12 A.3d at 665.

III.

The task of statutory interpretation requires us to begin[ ] with the language of the statute as the primary source of legislative intent. When the language is clearly consistent with the apparent purpose of the statute and the result is not absurd, we have held that no further inquiry into legislative intent is required. Beyond plain meaning, the purpose of the statute may be ascertained by examining the Legislature's statement of a statute's purposes, and courts may consider other "external manifestations" or "persuasive evidence" indicating the legislative intent. The language of a statute cannot be divorced from its context. [Thus], even where the language of the statute is plain, its meaning is controlled by its context. In short, the statutory language must be construed in light of and governed by its context within the overall statutory scheme. An appellate court may consider evidence such as a bill's title and function paragraphs, amendments that occurred as it passed through the Legislature, and its relationship to earlier and subsequent legislation to ascertain the Legislature's goal in enacting the statute.

*Id.* at 28, 12 A.3d at 665 (quoting *Motor Vehicle Admin. v. Lytle,* 374 Md. 37, 57, 821 A.2d 62, 73–74 (2003) (citations omitted)).

The question before us is whether, at a license suspension hearing conducted pursuant to the Statute, the MVA must establish and the ALJ must find that the officer stopped the driver on a highway or publicly-used private property. Respondent concedes that "absent from the literal wording of [subsection (f)(7)(i)(1) of the Statute] is any mention that the location of where the licensee was driving is to be addressed

[at an administrative hearing]." Respondent nonetheless contends that subsection (a)(2) of the Statute "clearly establishes that the Implied Consent Law only applies on a highway or private property used by the public in general. As such, when the phrase 'drive or attempt to drive' is used in [subsection (f)(7)(i)(1) of the Statute], it is an implicit requirement that the person be driving or attempting to drive on a highway or private property used for the public in general."

The MVA disagrees with Respondent's interpretation of subsection (a)(2). The MVA asserts that the reference in subsection (a)(2) to "highway[s] or any private property that is used by the public in general" relates only to the "consent" to testing that drivers impliedly give in return for the privilege to drive on Maryland's roadways. The MVA further argues that the Statute applies regardless of whether the driver is stopped on a highway, a publicly-used private road, or purely private property; in other words, the Statute does "not . . . preclude suspension if a motorist is detained somewhere other than on a highway" or private property used by the public in general.

The Statute, when viewed in its entirety, supports the MVA's arguments. We begin with subsection (a)(2), the provision upon which Respondent rests his argument. That provision states in relevant part:

Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol. . . .

Subsection (a)(2) contains two references to driving or attempting to drive. The first is found within what we shall label the "implied consent" clause, which establishes that "[a]ny person who *drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the*

*public in general* in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test...." T.R. § 16–205.1(a)(2) (emphasis added). The second reference is found within what we shall call the "applicability clause," which provides that submission to the breath test is required "if the person [is] detained on suspicion of *driving or attempting to drive while* under the influence of alcohol...." *Id.* (emphasis added). If, as Respondent advocates, the General Assembly had intended through the implied consent clause to limit applicability of the Statute only to those situations in which the motorist is driving on a highway or a publicly-used private roadway, it would have been unnecessarily repetitive to refer to "driving or attempting to drive" within the "applicability clause." Put differently, Respondent's interpretation would require us to read subsection (a)(2) as providing that "[a]ny person who is detained on suspicion of driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test." That, of course, is not how subsection (a)(2) reads.

To give effect to each clause of subsection (a)(2) and to avoid rendering either clause "meaningless or nugatory," *Smack v. Dept. of Health and Mental Hygiene,* 378 Md. 298, 306, 835 A.2d 1175, 1179 (2003) (citations omitted), we read the "implied consent" clause as establishing simply that any driver who has availed himself or herself of the privilege of driving on Maryland's roadways impliedly consents to submitting to a breath test. The "applicability clause" plainly indicates that the consented-to breath test is triggered whenever an officer has stopped or detained a driver on suspicion of driving while under the influence of alcohol. Noticeably absent from the applicability clause is any indication that the Statute applies only to stops of a person driving on a highway or publicly-used private property. We therefore construe subsection (a)(2) to

mean that the reach of the Statute is broad; that is, the administrative license provisions apply to any licensed driver, whether driving on public or purely private property in Maryland.[7]

Our construction of subsection (a)(2) is confirmed when it is read in conjunction with other provisions of the Statute. Subsection (f)(7)(i) sets forth the issues that the ALJ is to consider at the show cause administrative hearing. The location of the stop is not among the issues listed in that subsection. Neither is the location of the stop among the specific findings listed in subsection (f)(8)(i) that require suspension of the motorist's license to drive.

We made clear in *Jones*, 380 Md. 164, 844 A.2d 388, and more recently in *Aiken*, 418 Md. 11, 12 A.3d 656, that the only issues cognizable at the show cause hearing are those listed in (f)(7)(i) and the only findings of the ALJ that precipitate

---

7. This construction of subsection (a)(2) of the Statute is entirely consistent with the prior iterations of that subsection. We have explained that

[t]he precursor of § 16–205.1 was first enacted in 1969, by 1969 Md. Laws, ch. 158. Under that law, each applicant for the issuance or renewal of a driver's license had to sign a statement under oath or affirmation consenting (1) to take a chemical test to determine the alcoholic content of his or her blood, breath, or urine if detained upon suspicion of driving while intoxicated or impaired by alcohol, and (2) to having his or her driver's license suspended for up to 60 days for refusing to take the test.

*Janes v. State*, 350 Md. 284, 288, 711 A.2d 1319, 1321 (1998); *see* Md.Code (1977), T.R. § 16–205.1(a). That version of the law, with respect to the consent provision, remained in effect until it was repealed and reenacted with amendments in 1981. *See* 1981 Md. Laws Ch. 244. The amended statute also contained an "implied consent" provision, replacing the former consent provisions with the following:

Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a chemical test to determine the alcohol content of his blood if he should be detained on suspicion of driving or attempting to drive while intoxicated or while under the influence of alcohol.

*Richards*, 356 Md. at 363 n. 4, 739 A.2d at 62 n. 4. Codified at Maryland Code (1977, 1984 Repl.Vol.), T.R. § 16–205.1(a), that language of the implied consent provision is entirely consistent, in material respects, with (a)(2) of the current Statute.

license suspension are listed in (f)(8)(i). In *Jones*, the motorist's driver's license was suspended after refusing to submit to a breath test. 380 Md. at 166, 844 A.2d at 389. At the show cause hearing, Jones argued that, in order for his license to be suspended administratively, the MVA must first establish compliance with Maryland Code (2006 Repl.Vol.), § 10–303 of the Courts and Judicial Proceedings Article ("C.J."). That section requires, for purposes of proof of a driver's blood alcohol concentration at trial, that the chemical breath test was taken within two hours of the driver's apprehension.

We rejected the motorist's contention that C.J. § 10–303 also applies to administrative license suspensions. We observed that the language of subsection (f)(7)(i) of the Statute "is clear and unambiguous on its face" in limiting the issues cognizable at the administrative hearing. *Jones*, 380 Md. at 177, 844 A.2d at 395. We also noted that the timeliness of the test requirement was absent from subsection (f)(8)(i) of the Statute. *Id.*, 844 A.2d at 396. We explained that "at a hearing under subsection (f) the *only* issues shall be the six enumerated issues in the section."[8] *Id.*, 844 A.2d at 395–96 (quotation marks omitted). For those reasons, we held that the two-hour requirement "is not relevant in suspension hearings. . . ." *Id.* at 179, 844 A.2d at 397.

We used the same reasoning in *Aiken*. The motorist argued in that case that the MVA must establish as part of its prima facie case for license suspension that the blood alcohol test was administered by a "qualified person," as that term is defined in C.J. § 10–304, and that the testing equipment was approved by the State toxicologist. 418 Md. at 32–36, 12 A.3d at 668–70. In rejecting that argument, we noted the absence of any mention of the qualifications of the test administrator, and of approval by the toxicologist of the testing equipment,

---

8. Two years after *Jones* was decided, the General Assembly amended T.R. § 16–205.1(f)(7)(i) to differentiate chemical breath tests that showed a blood alcohol concentration between 0.08 and 0.15 from chemical breath tests that showed a blood alcohol concentration above 0.15. This amendment increased the total number of issues that may be raised at the administrative hearing from six to seven.

either in the list in subsection (f)(7)(i) of the "only" issues cognizable at the administrative hearing or in the list in subsection (f)(8)(i) of the findings by the ALJ that lead to automatic license suspension.

The rationale and holdings of *Jones* and *Aiken* are applicable here. The Statute, read as a whole, plainly demonstrates that the location of the stop is not a matter required to be established by the MVA. In the words of the MVA, "[i]f the Legislature intended to require the MVA to prove that an alcohol offense took place on a 'highway or on any private property used by the public in general in this State,' that requirement would be written into the Statute." We agree.

The construction we have given to the Statute, moreover, gives full effect to the legislative purpose behind it.[9] The Statute is remedial in nature. *Motor Vehicle Admin. v. Richards,* 356 Md. 356, 374, 739 A.2d 58, 68 (1999). The goals of the Statute

> are first, to help effectuate the administrative goals of the MVA in ridding Maryland roadways of drunk drivers and, second, to encourage both general compliance with Maryland law as well as specific fulfillment of the consent to taking a properly requested chemical breath test implied by a motorist's entry upon and usage of this State's roads.

*Id.,* 739 A.2d at 68.

To accomplish that purpose, the Statute establishes an administrative process that is "informal and summary in nature," *id.* at 376–77, 739 A.2d at 70, thereby providing for "speedy Administrative sanctions [that] [ ] help the offender to recognize the cause and effect relationship between the offense and the sanction which would otherwise be weakened by

---

**9.** Even when a statute is plain on its face, as we have determined the Statute to be, we may consult extrinsic evidence of legislative purpose as confirmation of that determination. *See, e.g., Kramer v. Liberty Prop. Trust,* 408 Md. 1, 19 n. 9, 968 A.2d 120, 130 n. 9 (2009) ("In the interest of completeness ... we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." (quotation marks and citation omitted)).

lengthy delays in the court processes," *Aiken,* 418 Md. at 29, 12 A.3d at 666 (internal quotation marks and citation omitted). In other words, the Statute is designed "to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests; the *[S]tatute [is] not meant to protect drivers." Id.* at 28, 12 A.3d at 666 (internal quotation marks and citation omitted) (emphasis added).

Respondent has not articulated a principled reason for reading into the Statute a location limitation, nor can we fathom one. In that regard, we find persuasive the reasoning of *Rettig v. State,* 334 Md. 419, 639 A.2d 670 (1994). We held in *Rettig* that T.R. § 21–902(a), which makes it a crime to drive while, inter alia, under the influence of alcohol, applies to both public and private property. 334 Md. at 427, 639 A.2d at 674. Of relevance to the present case, the *Rettig* Court observed:

> We have recognized previously that Maryland's drunk driving provisions generally were enacted for the protection of the public. The menace posed by an impaired driver on purely private property is sometimes no different from that posed by one who ventures onto property open to the public generally.... Furthermore, there is never a guarantee that a vehicle driven by someone in an impaired condition will remain off the roadways for long.

*Id.,* 639 A.2d at 674 (citations omitted). We decided *Rettig* in 1994. Since then, the General Assembly has not amended T.R. § 21–902 to overrule our construction of it.

The analysis of *Rettig* applies equally in the administrative realm, and further buttresses the conclusion to which we have come. We would be giving an absurd construction of the Statute by reading into it an intent by the General Assembly to require proof, for purposes of the administrative sanction of license suspension, that the driver stopped or detained was driving on a highway or private roadway used by the public, when no such intent on the part of the General Assembly is reflected in the criminal drunk-driving scheme. Our rules of

construction abhor absurdity; rather, the rules require a construction that is reasonable, compatible with common sense, and harmonizes various provisions of the Code. *See State v. Johnson*, 415 Md. 413, 421–22, 2 A.3d 368, 373 (2010) ("We presume that the legislature intends its enactments to operate together as a consistent and harmonious body of law"; furthermore, "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense" (citation omitted)). We give full effect to the General Assembly's intent by holding that the Statute applies to both public and private property, and therefore the MVA is not required to prove at a license suspension hearing that the stop occurred "on a highway or private property that is used by the public in general[.]"

## IV.

We hold that the Statute does not require the MVA to prove at the show cause administrative hearing that the officer stopped Respondent on a highway or private property used by the public in general.[10] The ALJ made all the findings required by subsection (f)(8)(i) of the Statute before suspending Respondent's license to drive. The Circuit Court's judgment to the contrary, therefore, must be reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE MOTOR VEHICLE ADMINISTRATION. COSTS TO BE PAID BY RESPONDENT.**

---

**10.** Our holding obviates the need to address the MVA's alternative argument that, if such proof was required, the officer's sworn statement supplied it.