73 A.3d 214

## MOTOR VEHICLE ADMINISTRATION

v.

## Jerry Dale SANNER.

### No. 101, Sept. Term, 2008.

Court of Appeals of Maryland.

Aug. 22, 2013.

Leight D. Collins, Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Petitioner.

MacKenzie A. Kantruss, Mount Airy, MD, on brief, for Respondent.

Leonard R. Stamm, Esq., Johanna Cohen Leshner, Esq., Goldstein & Stamm, P.C., Greenbelt, MD, for Amicus Curiae brief of Maryland Criminal Defense Attorneys' Association in Support of Respondent.

BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL * and MURPHY,** JJ.

BELL, C.J.

The respondent, Jerry Dale Sanner, was the driver of one of the motor vehicles involved in an accident on the night of May 12, 2007, in Westminister, Maryland. The officer that responded to the accident scene, having noted a "strong odor of alcoholic beverage emitting from the person and breath" of the respondent, arrested the respondent, and requested that he take a blood test to determine alcohol concentration. Following a hearing before the Motor Vehicle Administration ("MVA"), on December 10, 2007, the Administrative Law Judge suspended the respondent's drivers license for 90 days pursuant to Maryland Code (1977, 2006 Repl. Vol.) § 16–205.1(b)(1)(i)(2)(A) of the Transportation Article.[1]

---

\* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A he also participated in the decision and adoption of this opinion.

\*\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

1. In relevant part, Maryland Code (1977, 2006 Repl. Vol.) § 16–205.1 of the Transportation Article provides:

"(a)(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a

The Circuit Court for Carroll County reversed the order of suspension, holding that "reasonable grounds . . . that [Mr. Sanner] was under the influence of alcohol or intoxicated," could be inferred "only if, in combination with the odor of alcohol, the accident was [Mr. Sanner's] fault." The petitioner, the MVA, filed with this Court a petition for writ of certiorari, which we granted. *Motor Vehicle Admin. v. Sanner*, 406 Md. 443, 959 A.2d 792 (2008).[2] The question presented for review is:

---

vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

\* \* \*

"(b)(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

"(i) In the case of a person licensed under this title:

"1. Except as provided in item 2 of this item, for a test result indicating an alcohol concentration of 0.08 or more at the time of testing:

"A. For a first offense, suspend the driver's license for 45 days; or

"B. For a second or subsequent offense, suspend the driver's license for 90 days;

"2. For a test result indicating an alcohol concentration of 0.15 or more at the time of testing:

"A. For a first offense, suspend the driver's license for 90 days; or

"B. For a second or subsequent offense, suspend the driver's license for 180 days; or

"3. For a test refusal:

"A. For a first offense, suspend the driver's license for 120 days; or

"B. For a second or subsequent offense, suspend the driver's license for 1 year[.]"

2. Maryland Code (1974, 2013 Repl. Vol.) § 12–305 of the Courts and Judicial Proceedings Article provides:

"The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court or has rendered a final judgment on appeal from an administrative decision under Title 16 of the Transportation Article if it appears to the Court of Appeals, upon petition of a party that:

"Does a police officer's certification that a strong odor of an alcoholic beverage was present on the breath and person of a driver involved in a motor vehicle crash constitute reasonable grounds to request an alcohol content test under Transportation Article § 16–205.1(b)(2)?"[3]

We shall hold that the Administrative Law Judge's ("ALJ") determination, that the arresting officer had reasonable grounds to request that the respondent take a chemical test for alcohol concentration, was supported by substantial evidence, and, therefore, was not arbitrary, capricious, or premised on any erroneous conclusion of law. Accordingly, and for

---

"(1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or

"(2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed."

Thus, this Court has certiorari jurisdiction over this action.

3. Maryland Code (1977, 2009 Repl. Vol.) § 16–205.1(b)(2) of the Transportation Article provides:

"(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

"(I) Detain the person;

"(ii) Request that the person permit a test to be taken;

"(iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;

"(iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program under § 16–404.1 of this title, that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and

"(v) Advise the person of the additional criminal penalties that may be imposed under § 27–101(x) of this article on conviction of a violation of § 21–902 of this article if the person knowingly refused to take a test arising out of the same circumstances as the violation."

the reasons set forth hereinafter, answering the question presented in the affirmative, we shall reverse the judgment of the Circuit Court.

### I. Background

On May 12, 2007, at approximately 10:00 p.m., a vehicle collision occurred at the intersection of Flower Avenue and Maine Street in Westminister, Maryland. Upon his arrival at the scene of the collision, Trooper First Class Brian Clinton of the Maryland State Police ("MSP") determined that the respondent was the driver of one of the vehicles involved in the collision and, while interacting with the respondent, he detected a strong odor of alcoholic beverage "emitting from [his] person and breath." The respondent was arrested for driving under the influence of alcohol and taken to Carroll Hospital Center.

Upon his arrival at the hospital, the respondent was advised, through the MVA's DR–15 "Advice of Rights" form,[4] of the consequences of refusing or failing a chemical test for alcohol, and the administrative sanctions attendant to the taking or refusing of a test for alcohol content. The respondent agreed to take a test for alcohol content. Trooper Clinton directed an emergency care technician at the hospital to draw a specimen of blood from the respondent. That specimen was tested at the MSP Forensics Science Division by a qualified analyst, with the result that Mr. Sanner's blood alcohol content was found to be 0.22—more than two-and-a-half times the legal limit. The test result was duly certified on MSP Form 33 (Notification to Defendant of Result of Test Alcohol Concentration). Trooper Clinton also completed a MVA DR–15A (Officer's Certification and Order of Suspension) form, in which he set forth the "Reasonable Grounds"[5]

---

**4.** The office and purpose of the DR–15 was explored at length in *Motor Vehicle Admin. v. Atterbeary*, 368 Md. 480, 485–486 n. 1, 796 A.2d 75, 78–79 n. 1 (2002).

**5.** In addition to "Reasonable Grounds," every MVA DR–15A form contains a section entitled "Certification of Police Officer," which reads:

for his belief that Mr. Sanner was driving or attempting to drive a motor vehicle while under the influence or impaired by alcohol. He wrote:

"On 5/12/07 at 2200 hrs I responded to Flower Ave at Main St. for an accident. The 1st driver was identified by his [Maryland] Driver's License to be Jerry Dale Sanner. I detected a strong odor of alcoholic beverage emitting from person and breath. A blood test was completed and a .22 result was detected."

The respondent was notified that his driving privileges would be suspended for 90 days. In response, as he was permitted by § 16–205.1(f)(1) of the Transportation Article [6] to do, the respondent requested a hearing to challenge the

---

"I, the undersigned officer, had reasonable grounds to believe that the driver described and named above had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of Section 16–813 of the Maryland Vehicle Law."

6. Section 16–205.1(f)(1) of the Transportation Article states, in pertinent part:

"(f) Notice and hearing on refusal to take test; suspension of license or privilege to drive; disqualification from driving commercial vehicles.—

"(1) Subject to the provisions of this subsection, at the time of, or within 30 days from the date of, the issuance of an order of suspension, a person may submit a written request for a hearing before an officer of the Administration if:

"(I) The person is arrested for driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title; and

"(ii) 1. There is an alcohol concentration of 0.08 or more at the time of testing; or

"2. The person refused to take a test."

Maryland Code (1977, 2009 Repl. Vol.) § 16–205.1(f)(1) of the Transportation Article.

MVA's order of suspension. The matter was heard by an ALJ of the Maryland Office of Administrative Hearings, who accepted into evidence, without objection from the respondent, documentary exhibits offered by the MVA, namely, 1) Trooper Clinton's DR15A Certification; 2) The DR–15 Advice of Rights form signed by Trooper Clinton and the respondent; and 3) the MSP–33 Notification to Defendant of Result of Test Alcohol Concentration form. which recorded the respondent's test result of 0.22. Trooper Clinton had not been subpoenaed to the hearing.

After these exhibits had been admitted, the respondent moved for a "no action" disposition. He argued:

> "[t]here [was] no evidence in the record, particularly the officer's certification, [MVA exhibit] Number Four, which indicate[s] that the police officer who stopped or detained Mr. Sanner had reasonable grounds to believe the person who was driving or attempting to drive while under the influence of alcohol or while impaired by alcohol. The [Maryland Transportation Article] clearly requires that in 16–205.1(f)(8)(1). The only evidence, the only indication of anything is that there is emitting ... Alcohol beverage emitting from the person and breath. Nothing else indicates in any way that Mr. Sanner is under the influence of or was impaired by alcohol. Clearly alcohol breath in itself isn't sufficient for those grounds under any standard in any judicial system for proving what is necessary to proceed under 16–205.1 and based upon those grounds no action should be taken."

The ALJ continued the matter so that Trooper Clinton could appear and testify. When the case reconvened, Trooper Clinton failed to appear, and the respondent renewed his request for a "no action" disposition. The ALJ reviewed the documentary evidence that had been admitted previously and, regarding the issue of reasonable grounds, concluded that it was sufficient and that the petitioner had made out a prima facie case. The ALJ reasoned:

"[A]t this time I'm not going to grant the no action on the basis of the documents alone. I'm certainly willing to listen to testimony from your client, but in terms of the basis of the officer to make the stop of this particular individual, the accident in and of itself is more than sufficient grounds to interact with this particular person on that date and time. The accident is what can be the triggering event that this officer would have reasonable grounds to believe the person was driving or attempting to drive a motor vehicle under the influence or impaired by alcohol. There are lots of different cases, if you look at [*Motor Vehicle Admin. v.*] *Illiano,* [390 Md. 265, 888 A.2d 329 (2005) ]; *Illiano* very specifically says that it can be a failed headlight. It can be an expired tag. It can be a good faith stop for help and safety reasons. It can be a whole host of different reasons why an officer may stop and interact with the driver. It doesn't necessarily have to be the observation of weaving, running through red lights. It doesn't necessarily have to be the observation of driving. If you go to *Illiano* it details a whole host of different scenarios in which an officer can interact with a driver and that interaction with the driver would be sufficient to make the grounds that this person was driving. And then it takes it from there.

"So I have found that this officer had more than sufficient grounds and reasonable; more importantly reasonable grounds to believe that Mr. Sanner was driving or attempting to drive a motor vehicle while under the influence or impaired by alcohol. Not only do I have the boilerplate language but I have very clearly the officer's hand written notations under the reasonable grounds that Mr. Sanner was the driver involved in a motor vehicle accident.

"So at this point I would entertain testimony from [Mr. Sanner] to challenge the MVA's prima facie case at this time. If there's a challenge that would call into question [sic] then at that point I may change my ruling."

After the respondent declined to testify on the merits or proffer any testimony that might have undermined the probative value of Trooper Clinton's certification, the ALJ upheld

the order suspending the respondent's driving privileges for 90 days. The respondent, challenging the ALJ's order, filed a petition for judicial review in the Circuit Court for Carroll County. Following a hearing, the Circuit Court reversed the ALJ's decision, issuing the following "Memorandum Opinion and Order":

"Once [Mr. Sanner] declined to testify on the merits the ALJ found the evidence before her to be sufficient to find [Mr. Sanner] in violation of [§ 16.205.1 of the Maryland Transportation Article].

"This Court finds that there was insufficient evidence before the ALJ to make such a finding. Specifically, a motor vehicle accident involving two vehicles could result from one driver's fault, the other driver's fault, or no one's fault. There is nothing in the DR 15(A) supporting that the accident was [Mr. Sanner's] fault, and it is only if the accident was [Mr. Sanner's fault] that an inference could be drawn, in combination with the odor of alcohol that there were reasonable grounds to conclude that [Mr. Sanner] was under the influence of alcohol or intoxicated. The strong smell of alcohol is [the] only evidence of [Mr. Sanner] having consumed alcohol. It is not, by itself, probative on the issue of whether [Mr. Sanner] was affected by alcohol.

"The Court also finds the ALJ's determination to draw sufficient inferences from the available evidence arbitrary and capricious, in light of the fact that the ALJ had previously stated that she needed more evidence in the form of Trooper Clinton's testimony. Although the ALJ did specifically state on October 3, 2007 that [Mr. Sanner's] no action request would not necessarily succeed even if Trooper Clinton did not appear, the inconsistency between her need for his testimony on October 3, 2007 and her conclusion that she did not need it on December 10, 2007 remains unresolved.

"For the foregoing reasons, it is hereby

"**ORDERED**, that the Motor Vehicle Administration's Conclusion of Law of December 10, 2007 that the Petitioner had violated Transportation Article § 16–205.1 of the Maryland Code Annotated be and the same is hereby **REVERSED**."

As we have noted above, the MVA filed a petition for writ of certiorari seeking review of the Circuit Court's decision and we granted the petition. We shall now reverse.

## II. Standard of Review

In *Maryland Aviation Admin. v. Noland,* 386 Md. 556, 873 A.2d 1145 (2005), Judge Eldridge, writing for the Court, explicated the proper standard of review of an adjudicatory decision by an administrative agency, stating:

"A court's role in reviewing an administrative agency adjudicatory decision is narrow; it 'is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.'

"In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court 'must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence' and to draw inferences from that evidence.

"Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is not to 'substitute its judgment for the expertise of those persons who constitute the administrative agency.' Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected."

**32**

*Id.* at 571–72, 873 A.2d at 1154–55 (footnote omitted) (citations omitted) (emphasis omitted). *See Motor Vehicle Admin. v. Shea,* 415 Md. 1, 14–15, 997 A.2d 768, 775–76 (2010); *Motor Vehicle Admin. v. Delawter,* 403 Md. 243, 256–57, 941 A.2d 1067, 1076 (2008). *See also* Section 10–222(h) of the State Government Article, Maryland Code (1984, 2009 Repl. Vol.).[7]

## III. Discussion

Section 16–205.1 of the Maryland Transportation Article, also known as Maryland's "implied consent" or "administrative per se" law, was enacted to reduce the incidence of drunk driving and protect public safety. *Motor Vehicle Admin. v. Richards,* 356 Md. 356, 374, 739 A.2d 58, 68 (1999). *See Shea,* 415 Md. at 15, 997 A.2d at 776; *Motor Vehicle Admin. v. Shepard,* 399 Md. 241, 255, 923 A.2d 100, 108 (2007); *Motor Vehicle Admin. v. Jones,* 380 Md. 164, 178–79, 844 A.2d 388, 396–97 (2004); *Embrey v. Motor Vehicle Admin.,* 339 Md. 691, 697, 664 A.2d 911, 914 (1995); *Motor Vehicle Admin. v. Vermeersch,* 331 Md. 188, 194, 626 A.2d 972, 975 (1993); *Motor Vehicle Admin. v. Chamberlain,* 326 Md. 306, 313, 604 A.2d 919, 922 (1992). In order to further this goal, § 16–205.1(a)(2) authorizes the detention of any individual who is suspected of "driving or attempting to drive while under the influence of alcohol." Probable cause to arrest is not necessary before requesting that a driver take a test to determine alcohol

---

7. Section 10–222(h) of the State Government Article, Maryland Code (1984, 2009 Repl. Vol.), provides that a court, upon judicial review of an administrative agency's decision, may take the following actions:

"(1) remand the case for further proceedings;

"(2) affirm the final decision; or

"(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

"(i) is unconstitutional;

"(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

"(iii) results from an unlawful procedure;

"(iv) is affected by any other error of law;

"(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

"(vi) is arbitrary or capricious."

concentration. *Richards*, 356 Md. at 368 n. 7, 739 A.2d at 64 n. 7. All that is required is "reasonable grounds," on the part of the police officer, "to believe [that] the individual was driving or attempting to drive while under the influence of alcohol or drugs or both." *Id.*

This Court previously held that "the term, 'reasonable grounds', as used in § 16–205.1 means 'reasonable articulable suspicion' and not preponderance of the evidence or probable cause." *Shepard*, 399 Md. at 254, 923 A.2d at 107. Our cases make clear that this standard is met when a police officer detects a strong odor of alcohol, combined with other signs of impairment. *See, e.g., Id.* at 246, 923 A.2d at 102–103 (strong odor of alcohol on driver's breath combined with speeding, bloodshot eyes, a preliminary breath test result of .10, and the driver's admission that he drank two beers established reasonable grounds); *Illiano*, 390 Md. at 268–69, 888 A.2d at 331–32 (strong odor of alcohol coming from vehicle combined with driver's statements and performance on field sobriety tests established reasonable grounds); *Atterbeary*, 368 Md. at 484–85, 796 A.2d at 78 (strong odor of alcohol on driver combined with slurred speech, bloodshot eyes, and failed sobriety tests established reasonable grounds).

In this case, Trooper Clinton's detection of a "strong odor of an alcoholic beverage emitting from the person and breath of Mr. Sanner," combined with the undisputed fact that Mr. Sanner was the driver of one of the vehicles involved in an accident more than meets the standard of reasonable suspicion that the statute and our case law require. Not only does the Circuit Court's statement that "the strong smell of alcohol is [the] only evidence of Mr. Sanner having consumed alcohol and not probative on the issue of whether Mr. Sanner was affected by alcohol," directly contradict what this Court said in *Amalgamated Transit Union, Div. 1300 v. Mass Transit Admin.*, 305 Md. 380, 393, 504 A.2d 1132, 1138 (1986), that "[a] sufficiently strong odor of alcohol on the motorist's breath can furnish reasonable grounds" to "request or require an individual to take a chemical test for alcohol [under 16–205.1]," it's

fault/no-fault based definition of "reasonable grounds" imposes a requirement that cannot be supported by either the plain language of § 16–205.1 or this Court's precedents.

 There also is no merit to the Circuit Court's finding that the "ALJ's determination to draw sufficient inferences from the available evidence [was] arbitrary and capricious, in light of the fact that the ALJ had previously stated [at the October 3, 2007 hearing] that she needed more evidence in the form of Trooper Clinton's testimony." The following transpired immediately after the respondent's Counsel moved for a "no action disposition" at the initial hearing:

"[ALJ]: All right. Since counsel has challenged an issue that was brought up by the MVA concerning the evidence of use of alcohol other than alcohol odor I would not be granting you a no action on this basis but instead I will grant the MVA's request for subpoena for the officer to appear.

"[Respondent's Counsel]: Just for the record, I'm totally not totally clear of the answer. I would object to whether you have the ability to do that but I'm not going to argue the point.

"[ALJ] We're in ... I have three choices ... I may accept exclusively the entire proffer denying the subpoena request which would be that if you [Respondent's counsel], on behalf of the Licensee [Mr. Sanner], were to make a proffer that there was nothing other than the odor alcohol and you're making the proffer, not the MVA, you're making the proffer and that there's nothing there but the odor of alcohol and that's your proffer and I believe when I subpoena the police officer this police officer will testify the officer had nothing but an odor of alcohol, that's all he had to go on before he went through the process of asking for Advice of Rights and then taking of the blood test or a breathalyzer. I can deny the subpoena request; accept all the evidence before me, including the proffer and under this option, if I determine that the proffer is assumed true in its entirety and it's sufficient to rebut the conflicting evidence then you win

without the need for the subpoena for the police officer. That would be option A.

"Option B. I can reject the proffer as a whole, also denying the subpoena request but if I do that I must provide additionally a valid explanation for my rejection and this will enable me to dispose of otherwise improper subpoena requests. So you make the proffer and if ... I think there's more than sufficient ruling without the officer being present.

"Or third, and this is where I am. Third and it says, an uncertainty of accuracy of the driver's proffer. Now you've made no real proffer. The MVA's made a subpoena request and the proffer in the subpoena request is that we believe that the evidence of use of alcohol may not be enough for you, Administrative Law Judge, to make a decision in this case. Counsel is actually agreeing with the MVA on this point. I'm saying I think you're both right. How about that?

"[Respondent's Counsel] There you go.

"[ALJ]: So I am going to suspend judgment, make no decision. I believe that I do need some additional information in order to make a determination. And for those reasons I will postpone ... Continue the matter; subpoena the police officer for the officer to testify.

* * *

"[ALJ] *If the officer does not appear for whatever reason which does indeed happen from time to time it would not necessarily mean that it will result in a no action being granted.*

"Okay. What I've written here is you've made the reasonable grounds argument that there was no reasonable grounds to establish that Mr. Sanner was under the influence of impaired by alcohol, that the DR15(a) only notes the odor of alcohol nothing else. I agreed. Because the MVA did request a subpoena on this issue I've continued the matter to subpoena [Trooper Clinton]. I've noted that there's been no testimony taken in this case and because

there's been no testimony I have not made a ... *I've held in abeyance my decision making and so if the officer doesn't show up it doesn't necessarily mean a no action will result.*"

(Emphasis added).

The record illustrates that the ALJ did not state that she would grant the respondent's "no action" request if Trooper Clinton failed to appear, or that she needed Trooper Clinton's testimony before proceeding to make findings based on the documentary evidence before her. Her statement "I agreed" is ambiguous, at best. That is especially so when that statement is considered along with her statements, made both before—"If the officer does not appear for whatever reason which does indeed happen from time to time it would not necessarily mean that it will result in a no action being granted"—and after—"I've held in abeyance my decision making and so if the officer doesn't show up it doesn't necessarily mean a no action will result"—the "I agreed" statement, indicating that the trooper's failure to appear would not be dispositive of whether a no action finding would be made. Apart from the context, on one hand, "I agreed" could have meant that she initially agreed with the respondent's counsel, that there were no reasonable grounds to conclude that the respondent was under the influence of alcohol or intoxicated; on the other hand, it simply could have meant that the she "agreed" to postpone the hearing because the MVA did, in fact, request a subpoena for Trooper Clinton. This ambiguity, which easily could have been explored by the respondent's counsel at any point during the rescheduled hearing simply was not pursued. Instead, the respondent chose not to testify at the hearing and, more important, when offered the opportunity to do so, he did not proffer any evidence, or argument, that would have undermined the MVA's documentary evidence. We are satisfied from these facts that the ALJ's decision to make findings based on the documentary evidence before her was neither "arbitrary" nor "capricious."

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED; CASE REMANDED TO**

THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE MOTOR VEHICLE ADMINISTRATION. COSTS TO BE PAID BY THE RESPONDENT.