82 A.3d 179

**MOTOR VEHICLE ADMINISTRATION**

v.

**James Robert SPIES, III.**

**No. 73, Sept. Term, 2012.**

Court of Appeals of Maryland.

Dec. 23, 2013.

Neil I. Jacobs, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

No argument on behalf of the Respondent.

Argued before: BARBERA, C.J., HARRELL,

BATTAGLIA, GREENE, ADKINS, McDONALD, BELL*, JJ.

BELL, C.J., (Retired).

We granted certiorari in this case to consider whether a moderate odor of alcohol emanating from the person of a motorist, alone, provides an adequate basis for a law enforcement officer to suspect that the motorist was driving while under the influence of, or impaired by, alcohol and, therefore, constitutes "reasonable grounds," pursuant to Maryland Code (1977, 2009 Repl.Vol., 2011 Cum.Supp.) § 16–205.1(b)(2) of the Transportation Article,[1] to request the motorist to take an alcohol content test. For reasons provided below, we answer

---

\* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Code (1977, 2009 Repl.Vol., 2011 Cum.Supp.) § 16–205.1(b)(2) of the Transportation Article provides:

"(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

"(i) Detain the person;

"(ii) Request that the person permit a test to be taken;

"(iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;

"(iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program under § 16–404.1 of this title, that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and

"(v) Advise the person of the additional criminal penalties that may be imposed under § 27–101(x) of this article on conviction of a violation of § 21–902 of this article if the person knowingly refused to take a test arising out of the same circumstances as the violation."

that question in the affirmative and reverse the judgment of the Circuit Court for Queen Anne's County.

On September 4, 2011, at approximately 1 A.M., the respondent, James Robert Spies, III, was observed by Maryland State Trooper Brad Hall ("Trooper Hall") to have "fail[ed] to obey [a] traffic control device" while driving on Main Street in Grasonville, Maryland. Trooper Hall pulled the respondent's vehicle over and, upon approaching the vehicle, detected a "moderate odor of an alcoholic beverage on [the respondent's] breath." Trooper Hall's request that the respondent submit to a standard field sobriety test ("SFST") was refused. Trooper Hall placed the respondent under arrest and transported him to the Maryland State Troopers Barracks in Centreville, Maryland. Once there, Trooper Hall, pursuant to Maryland Code § 16–205.1(a)(2) [2] of the Transportation Article, requested that the respondent submit to a blood alcohol content test. After being advised, through the MVA's DR–15 "Advice of Rights" form,[3] of the consequences of refusing or failing a chemical test for alcohol, and, pursuant to § 16–205.1(b),[4] the administrative sanctions attendant to the taking

---

**2.** Pursuant to Maryland Code § 16–205.1(a)(2) of the Transportation Article:

> "Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title."

**3.** *See Motor Vehicle Admin. v. Atterbeary,* 368 Md. 480, 485 n. 1, 796 A.2d 75, 78 n. 1 (2002), for a discussion of the office and purpose of the Form DR–15.

**4.** Maryland Code § 16–205.1(b) of the Transportation Article provides, in relevant part:

or refusing of a test for alcohol content, the respondent refused to take that test, as a consequence of which he was subjected to a 120 day suspension of his driver's license for the first offense. On September 23, 2011, the respondent requested, and was granted, an administrative show-cause hearing pursuant to § 16–205.1(f),[5] to challenge the MVA's suspension of his driver's license.

"(b)(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

"(i) In the case of a person licensed under this title:

"1. Except as provided in item 2 of this item, for a test result indicating an alcohol concentration of 0.08 or more at the time of testing:

"A. For a first offense, suspend the driver's license for 45 days; or

"B. For a second or subsequent offense, suspend the driver's license for 90 days;

"2. For a test result indicating an alcohol concentration of 0.15 or more at the time of testing:

"A. For a first offense, suspend the driver's license for 90 days; or

"B. For a second or subsequent offense, suspend the driver's license for 180 days; or

"3. For a test refusal:

"A. For a first offense, suspend the driver's license for 120 days; or

"B. For a second or subsequent offense, suspend the driver's license for 1 year[.]"

5. Section 16–205.1(f) provides, in relevant part:

"Notice and hearing on refusal to take test; suspension of license or privilege to drive; disqualification from driving commercial vehicles.—

"(1) Subject to the provisions of this subsection, at the time of, or within 30 days from the date of, the issuance of an order of suspension, a person may submit a written request for a hearing before an officer of the Administration if:

"(i) The person is arrested for driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title; and

"(ii)(1) There is an alcohol concentration of 0.08 or more at the time of testing; or

On December 8, 2011, the respondent appeared before Administrative Law Judge Charles Boutin ("ALJ").[6] The ALJ admitted *into evidence, without objection, a continuation* letter received by the respondent, two copies of Trooper Hall's certification order of suspension, a photocopy of the respondent's driver's license, and the DR–15 advice of rights form signed by both Trooper Hall and the respondent. The respondent contended that he obeyed the traffic control device, and, as a result, Trooper Hall lacked "reasonable grounds" to stop him or request the field sobriety tests. The respondent conceded that the odor of alcohol emanating from his breath provided a sufficient basis for Trooper Hall to conclude that he had used alcohol and, consequently, to permit him to investigate further. The respondent denied, however, that it was enough to suspect him of having been under the influence. Thus, relying on *Blasi v. State,* 167 Md.App. 483, 893 A.2d 1152, *cert. denied,* 393 Md. 245, 900 A.2d 751 (2006), the petitioner contended that the MVA failed to establish that Trooper Hall had a basis for suspecting that the admitted use of alcohol impaired his driving.[7] Arguing, therefore, that the

---

"(2) The person refused to take a test."

**6.** Trooper Hall did not appear at the hearing and the MVA was not represented at the hearing. Instead, it submitted a packet of documents, which included: the MVA's transmittal form of the respondent's file to the agency; a continuation letter sent to the respondent on September 28, 2011; the Trooper's certification order of suspension; a photocopy of the respondent's driver's license; the advice of rights form, DR–15, which was checked "known" and signed by the respondent and the Trooper; a receipt for $125.00; an illegible second copy of the Trooper's certification DR–15A; the respondent's request for a hearing.

**7.** *Blasi* is inapposite. 167 Md.App. 483, 893 A.2d 1152. One of the issues in that case was whether the police officer had probable cause to stop the defendant, *id.* at 493, 893 A.2d at 1158, not whether he had reasonable suspicion to suspect that the defendant was driving while intoxicated or under the influence and, thus, grounds to request that the defendant take a test for alcohol content. The tests are decidedly different. In any event, we have rejected a "fault/no fault" approach to the resolution of the latter question. In *Motor Vehicle Admin. v. Sanner,* 434 Md. 20, 73 A.3d 214 (2013), the Circuit Court for Carroll County applied that approach, which we rejected, explaining: "[the Circuit

MVA failed to meet its burden, he requested that the ALJ take no action.

The ALJ denied the respondent's request and affirmed the respondent's 120–day suspension, concluding that the MVA's evidence outweighed the respondent's evidence and arguments. The ALJ specifically found:

> "[T]here's more than sufficient information from a reasonable articulable suspicion point of view. We have a violation of a traffic device, we have moderate odor of alcohol, we have a licensee who flat out says, 'I'm not going to take the field sobriety tests,' and then he's advised and he refused to take the test."

On December 19, 2011, the respondent filed in the Circuit Court for Queen Anne's County a petition for judicial review of the administrative decision. Relying on *Ferris v. State*, 355 Md. 356, 735 A.2d 491 (1999), he asserted that the ALJ erred in his assessment of the sufficiency of the proffered indicia of alcohol use; the respondent's alleged failure to obey a traffic control device, the moderate smell of alcohol, and the respondent's refusal to take the field sobriety tests, he argued, were insufficient to establish "reasonable grounds" for a request to take an alcohol content test. The MVA responded that *Ferris*, a criminal case, is inapposite [8] and that, pursuant to *Motor*

---

Court's] fault/no-fault based definition of 'reasonable grounds' imposes a requirement that cannot be supported by either the plain language of § 16–205.1 or this Court's precedents." *Id.* at 33–34, 73 A.3d at 222.

The respondent also attacked Trooper Hall's credibility, contending that he had a vested interest in making arrests and "prosecuting cases." The respondent further alleged that Trooper Hall's observations on the MVA form were inconsistent with his statements in the police report. The police report, however, was not included in the record.

**8.** In *Ferris v. State*, 355 Md. 356, 735 A.2d 491 (1999), we considered whether an operator of a motor vehicle is seized within the meaning of the Fourth Amendment when he is asked to get out of his car for questioning after a traffic stop is completed, and if so, whether the seizure was supported by reasonable suspicion. We concluded that the stop was a seizure within contemplation of the Fourth Amendment, and that the seizure was not supported by reasonable suspicion. *Id.* at 387, 735 A.2d at 507. At issue there was whether *Ferris* was in possession of

*Vehicle Admin. v. Shea*, 415 Md. 1, 14–15, 997 A.2d 768, 775–76 (2010) (quoting *Motor Vehicle Admin. v. Delawter*, 403 Md. 243, 256–57, 941 A.2d 1067, 1076 (2008)), the Circuit Court should give deference to Trooper Hall's observations, his statements, and the negative inference Trooper Hall drew from the respondent's initial refusal to take the field sobriety tests.

The Circuit Court rejected the MVA's arguments. Concluding that, based on the totality of the circumstances, the MVA failed to establish "reasonable grounds" to suspect the respondent of driving while under the influence and, then to request that he take the test, it reversed the ALJ's decision. The Circuit Court determined that the record, which lacked documentation specifying the nature of the respondent's traffic control device violation, did not contain substantial evidence in support of the ALJ's findings and conclusions. Observing that the question of whether "the moderate odor of alcohol alone" is enough for law enforcement to reasonably suspect a person of driving under the influence or while impaired by the use of alcohol was left open by *Shea*, 415 Md. at 19–20, 997 A.2d at 779, the Circuit Court ruled:

"It is well-established that a low level of suspicion is required in a 'reasonable grounds' analysis. That being said, the record, as it was presented to the ALJ, was deplete of any sufficient indicia of alcohol use, namely because the failure to obey a traffic control device, the moderate smell of alcohol, and Petitioner's refusal to submit to a SFST, without more, simply do not rise to the level of 'reasonable grounds,' as articulated in this State's case law."

On July 30, 2012, the MVA filed, pursuant to Md.Code (1974, 2006 Repl.Vol.) § 12–305 of the Courts & Judicial Proceedings Article,[9] a petition for *writ of certiorari*, which we

a controlled substance with the intent to distribute. The question of the effect of an odor of alcohol, in any degree, was not an issue.

9. Maryland Code (1974, 2006 Repl.Vol.) § 12–305 of the Courts and Judicial Proceedings Article provides:

granted on October 19, 2012. *Motor Vehicle Admin. v. Spies*, 429 Md. 81, 54 A.3d 759 (2012). The issue presented by the petition, and for which we granted "cert", was whether a " 'moderate odor' of alcohol alone may have been enough to permit [the trooper] to suspect that [the driver] was driving while under the influence of or impaired by alcohol," and, therefore, may constitute "reasonable grounds" to request that a motorist take an alcohol content test pursuant to Transportation Article § 16–205.1(b)(2).

In applying § 16–205.1, we do not "write on a clean slate" and must consider the guidance contained in our earlier cases. *Shea*, 415 Md. at 15, 997 A.2d at 776. In *Motor Vehicle Admin. v. Sanner*, 434 Md. 20, 27, 73 A.3d 214, 218 (2013), we considered a similar issue to the one in the case *sub judice:* whether an arresting officer who detected "a strong odor of alcoholic beverage emitting from person and breath" of a motorist, who had been involved in an accident, had reasonable grounds to request the test pursuant to § 16–205.1(b)(2). The principle difference between the dispositive question in *Sanner* and the dispositive question in the present case is that, in *Sanner*, the question was premised on there being a "strong" odor of alcohol, whereas here, the arresting officer only detected a "moderate" odor of alcohol. As we shall see, this distinction is immaterial.

In *Sanner*, we relied on *Amalgamated Transit Union, Div. 1300 v. Mass Transit Admin.*, 305 Md. 380, 393, 504 A.2d 1132, 1138 (1986), for the proposition that "[a] sufficiently

"Certification of decisions to Court of Appeals for reviews and determination.

"The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court or has rendered a final judgment on appeal from an administrative decision under Title 16 of the Transportation Article if it appears to the Court of Appeals, upon petition of a party that:

"(1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or

"(2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed."

strong odor of alcohol on the motorist's breath can furnish reasonable grounds" to "request or require an individual to take a chemical test for alcohol [under 16–205.1]." 434 Md. at 33–34, 73 A.3d at 222. In reaching our ultimate conclusion, we stated:

> "Section 16–205.1 of the Maryland Transportation Article, also known as Maryland's 'implied consent' or 'administrative per se' law, was enacted to reduce the incidence of drunk driving and protect public safety. *Motor Vehicle Admin. v. Richards*, 356 Md. 356, 374, 739 A.2d 58, 68 (1999). *See Shea*, 415 Md. at 15, 997 A.2d at 776; *Motor Vehicle Admin. v. Shepard*, 399 Md. 241, 255, 923 A.2d 100, 108 (2007); *Motor Vehicle Admin. v. Jones*, 380 Md. 164, 178–79, 844 A.2d 388, 396–97 (2004); *Embrey v. Motor Vehicle Admin.*, 339 Md. 691, 697, 664 A.2d 911, 914 (1995); *Motor Vehicle Admin. v. Vermeersch*, 331 Md. 188, 194, 626 A.2d 972, 975 (1993); *Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 313, 604 A.2d 919, 922 (1992). In order to further this goal, § 16–205.1(a)(2) authorizes the detention of any individual who is suspected of 'driving or attempting to drive while under the influence of alcohol.' Probable cause to arrest is not necessary before requesting that a driver take a test to determine alcohol concentration. *Richards*, 356 Md. at 368 n. 7, 739 A.2d at 64 n. 7. All that is required is 'reasonable grounds,' on the part of the police officer, 'to believe [that] the individual was driving or attempting to drive while under the influence of alcohol or drugs or both.' *Id.*

> "This Court previously held that 'the term, reasonable grounds, as used in § 16–205.1 means 'reasonable articulable suspicion' and not preponderance of the evidence or probable cause.' *Shepard*, 399 Md. at 254, 923 A.2d at 107. Our cases make clear that this standard is met when a police officer detects a strong odor of alcohol, combined with other signs of impairment. *See, e.g.,* [*i* ]*d.* at 246, 923 A.2d at 102–103 (strong odor of alcohol on driver's breath combined with speeding, bloodshot eyes, a preliminary breath test result of .10, and the driver's admission that he drank

two beers established reasonable grounds); [*Motor Vehicle Admin. v.*] *Illiano*, 390 Md. [265] at 268–69, 888 A.2d [329] at 331–32 [ (2005) ] (strong odor of alcohol coming from vehicle combined with driver's statements and performance on field sobriety tests established reasonable grounds); *Atterbeary*, 368 Md. at 484–85, 796 A.2d at 78 (strong odor of alcohol on driver combined with slurred speech, bloodshot eyes, and failed sobriety tests established reasonable grounds).

"In this case, Trooper Clinton's detection of a 'strong odor of an alcoholic beverage emitting from the person and breath of Mr. Sanner,' combined with the undisputed fact that Mr. Sanner was the driver of one of the vehicles involved in an accident more than meets the standard of reasonable suspicion that the statute and our case law require."

*Id.* at 32–33, 73 A.3d at 221–22.

■ *Motor Vehicle Admin. v. Shea*, 415 Md. 1, 997 A.2d 768 (2010) is to similar effect. In that case, we framed the question before the Court as follows:

"Does a police officer's certification that a moderate odor of an alcoholic beverage was of sufficient strength to suspect that a motorist was driving while impaired by alcohol, along with subsequent field sobriety tests that led to the driver's arrest, allow an administrative law judge to find reasonable grounds to request an alcohol content test under Transportation Article § 16–205.1(b)(2), without application of Fourth Amendment standards to evaluate the sufficiency of a police officer's reasonable grounds?"

*Id.* at 12, 997 A.2d at 774. We observed that "reasonable grounds," for the establishment of which only a "low quantum of suspicion" [10] is required, *id.* at 20, 997 A.2d at 779, must be

---

**10.** We explained:

"Reasonable suspicion is a 'common sense, nontechnical conception that considers factual and practical aspects of daily life and how reasonable and prudent people act.' *Crosby v. State*, 408 Md. 490, 507, 970 A.2d 894, 903–04 (2009) (quoting *Bost v. State*, 406 Md. 341,

considered in the context of the statute's purpose, "to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests." *Id.* at 15, 997 A.2d at 776 (quoting *Motor Vehicle Admin. v. Shepard,* 399 Md. 241, 255, 923 A.2d 100, 108 (2007), in turn citing *Motor Vehicle Admin. v. Richards,* 356 Md. 356, 374, 739 Md. 58, 68 (1999)). Thus, we concluded that, while the "moderate odor of alcohol alone may have been enough to permit [the officer] reasonably to suspect that Respondent was driving while under the influence of or impaired by alcohol," we did not decide if it was in that case, "because the ALJ was permitted to infer, as he obviously did, that Officer Phelps arrested Respondent because his performance on the [field sobriety tests] suggested alcohol impairment." *Id.* at 19–20, 997 A.2d at 779. Although we left the question of the effect of a moderate odor of alcohol open, we emphasized that "the statute [is] not meant to protect drivers" who are suspected of drunk driving. *Id.* at 15–16, 997 A.2d at 776 (quotations omitted). We also stated that the purpose of § 16–205.1 is "to prevent unscrupulous or incompetent persons from engaging in the licensed activity." *Id.* at 16, 997 A.2d at 777 (quoting *Richards,* 356 Md. at 372–73, 739 A.2d at 67–8). "To accomplish that purpose, the Statute establishes an administrative process that is 'informal and summary in

---

356, 958 A.2d 356, 365 (2008)). Reasonable suspicion requires less in the way of quantity and quality of evidence than is required for probable cause, *see Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 308 (1990), 'and it falls considerably short of satisfying a preponderance of the evidence standard,' *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740, 750 (2002). Nevertheless, reasonable suspicion 'embraces something more than an inchoate and unparticularized suspicion or hunch,' and the determination 'must be based on the totality of the circumstances.' *Crosby,* 408 Md. at 507, 970 A.2d at 904 (internal quotation marks and citation omitted). The analysis requires courts to give appropriate deference to the training and experience of the law enforcement officer and to the officer's ability to make reasonable inferences from his or her observations, based on that training and experience. *See id.* 408 Md. at 508, 970 A.2d at 904; *accord Arvizu,* 534 U.S. at 266, 122 S.Ct. at 750–51, 151 L.Ed.2d at 749–50." *Motor Vehicle Admin. v. Shea,* 415 Md. 1, 19, 997 A.2d 768, 778 (2010).

nature,' [*Richards*, 356 Md.] at 376–77, 739 A.2d at 70, thereby providing for 'speedy Administrative sanctions [that] [ ] help the offender to recognize the cause and effect relationship between the offense and the sanction which would otherwise be weakened by lengthy delays in the court processes.' " *Motor Vehicle Admin. v. Loane*, 420 Md. 211, 229–30, 22 A.3d 833, 843–844 (2011) (quoting *Motor Vehicle Admin. v. Aiken*, 418 Md. 11, 29, 12 A.3d 656, 666 (2011)).

Other decisions of this Court regarding § 16–205.1, and earlier versions of the "implied consent" statute, *see* 1989 Md. Laws, ch. 284; 1981 Md. Laws, ch. 244; 1969 Md. Laws, ch. 158, have expressly held that "a very slight odor of alcohol on the driver's breath," with no other sign of intoxication, sufficed to raise a jury question "whether [the motorist] was actually under the influence of intoxicating liquor in any degree[.]" *Singleton v. Roman*, 195 Md. 241, 247, 72 A.2d 705, 707 (1950). We have also recognized that "[a] sufficiently strong odor of alcohol on the motorist's breath can furnish reasonable grounds" to believe that the individual had been driving under the influence and thus justify requesting the individual to undergo a breath test under § 16–205.1. *Amalgamated Transit Union, Div. 1300 v. Mass Transit Admin.*, 305 Md. 380, 393, 504 A.2d 1132, 1138 (1986); *cf. State v. Werkheiser*, 299 Md. 529, 531, 474 A.2d 898, 899 (1984). In the years following *Amalgamated Transit Union*, we have affirmed the suspension of a driver's license for refusal to take a chemical breath test under § 16–205.1 where the police officer's suspicion of drunk driving was first prompted by what the ALJ described as "a moderate odor of alcohol on [the driver's] breath." *Richards*, 356 Md. at 360, 739 A.2d at 60; *but see id.* at 358–59, 739 A.2d at 60 (quoting unattributed text characterizing the odor as "strong").

Applying the above authorities to the present case, we now conclude that, consistent with the purpose of 16.205.1, a "moderate odor" of alcohol alone is enough to constitute "reasonable grounds," i.e. is sufficient for a request to take an alcohol content test. In the case *sub judice*, the "common sense" basis for "reasonable grounds" is that Trooper Hall

smelled a moderate odor of alcohol emanating from the respondent. *See Shea,* 415 Md. at 19, 997 A.2d at 778. The odor of alcohol is one of the "practical aspects of daily life," and its detection is "how reasonable and prudent people" could come to suspect that another person is under the influence of alcohol. *Id.* We have similarly held that a trial court errs if it denies a jury the opportunity to consider such evidence to determine whether the driver "was actually under the influence" of alcohol because ordinary people are able to draw common sense inferences regarding possible intoxication from even a "slight odor of alcohol on the driver's breath." *Singleton,* 195 Md. at 247, 72 A.2d at 707. Consequently, we conclude that Trooper Hall's detection of a moderate odor of alcohol on the respondent's breath amounts to "more than an inchoate and unparticularized suspicion or hunch," and does indeed satisfy the "low quantum of suspicion necessary for 'reasonable grounds.'" *Shea,* 415 Md. at 20, 997 A.2d at 779.

For these reasons, we conclude that the ALJ's legal determination was based upon the correct application of Maryland law, and that there existed substantial evidence in the record to support the ALJ's finding that Trooper Hall met the requirements of § 16–205.1(a)(2). We therefore reverse the decision of the Circuit Court.

JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE JUDGMENT OF THE MOTOR VEHICLE ADMINISTRATION. COSTS TO BE PAID BY THE RESPONDENT.